# United States Court of Appeals for the Federal Circuit

---

**JOHN BEAN TECHNOLOGIES CORPORATION,**
*Plaintiff-Appellant*

**v.**

**MORRIS & ASSOCIATES, INC.,**
*Defendant-Appellee*

---

2017-1502

---

Appeal from the United States District Court for the Eastern District of Arkansas in No. 4:14-cv-00368-BRW, Senior Judge Billy Roy Wilson.

---

Decided: April 19, 2018

---

GARY D. MARTS, JR., Wright, Lindsey & Jennings LLP, Little Rock, AR, argued for plaintiff-appellant. Also represented by RICHARD BLAKELY GLASGOW.

NORMAN ANDREW CRAIN, Thomas|Horstemeyer LLP, Atlanta, GA, argued for defendant-appellee. Also represented by DAN ROBERT GRESHAM, WESLEY AUSTIN ROBERTS.

---

Before PROST, *Chief Judge,* REYNA and WALLACH, *Circuit Judges.*

REYNA, *Circuit Judge.*

John Bean Technologies Corp. appeals from a decision by the United States District Court for the Eastern District of Arkansas holding that its patent infringement claims are barred by the affirmative defenses of equitable estoppel and laches.[1] Because the asserted claims in this action were substantively amended or added following *ex parte* reexamination in 2014, and the plaintiff only sought damages for infringement of the reexamined claims, the district court abused its discretion in finding equitable estoppel based on activity beginning in 2002, twelve years prior to the issuance of the reexamination certificate. We therefore reverse the district court's grant of summary judgment based on its finding of equitable estoppel, and remand for proceedings consistent with this opinion.

---

[1] Following the district court's grant of summary judgment, the Supreme Court issued its decision in *SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*, 137 S. Ct. 954 (2017), holding that laches cannot be asserted as a defense to infringement occurring within the six-year period prior to the filing of a complaint for infringement as prescribed by 35 U.S.C. § 286. As the allegedly infringing activity for which John Bean seeks damages started on May 9, 2014, and John Bean filed its complaint for patent infringement on June 19, 2014, we hold, and the parties agree, that *SCA Hygiene* bars Morris's laches defense. Appellant's Br. 41; Appellee's Br. 1 n.2. We thus reverse the district court's grant of summary judgment based on Morris's affirmative defense of laches.

BACKGROUND

John Bean Technologies Corp., through its predecessor-in-interest, Cooling & Applied Technology, Inc. (collectively "John Bean") owns U.S. Patent No. 6,397,622 ("'622 patent"), which is directed to a "high-side" auger-type chiller for cooling poultry carcasses. J.A. 35. The '622 patent issued on June 4, 2002. At the time of its issuance, the '622 patent contained two claims, independent claim 1 and dependent claim 2.

Appellee Morris & Associates, Inc. ("Morris") competes with John Bean in the poultry chiller market. They are the only two poultry chiller manufactures in the United States, and have frequently found themselves on opposing sides of a courtroom. J.A. 8, 48. On June 27, 2002, shortly after the '622 patent issued, Morris's counsel sent a letter to John Bean's counsel, informing him that John Bean had been contacting Morris's customers and that John Bean "representatives have asserted to the customers that the equipment being sold by Morris infringes U.S. Patent 6,397,622 recently issued to [John Bean]." J.A. 263 ("Demand Letter"). The Demand Letter notified John Bean that Morris believed the '622 patent to be invalid based on multiple prior art references, and concluded with the following demand:

> If [John Bean] is not convinced that its patent 6,397,622 is invalid, I request that you provide the information necessary to show why each one of [the prior art references] do not anticipate or make obvious the claims of the patent.
>
> Because of the several reasons for invalidity of the '622 patent, we demand that you advise [John Bean] to terminate its statements that the sale of the Morris Poultry Chiller will infringe the '622 patent. Such statements on behalf of [John Bean] is [sic] misleading because the patent is invalid and such statements persuade the customers to

> purchase the [John Bean] poultry chiller based on the invalid patent. This comprises unfair competition.
>
> Now that [John Bean] has been informed of the invalidity of its patent, any statements that assert infringement of U.S. Patent 6,397,622 made from this point on are likely to be met with a suit for unfair competition.

J.A. 266. The prior art asserted in the Demand Letter included a primary reference for both anticipation and obviousness invalidity arguments, U.S. Patent No. 5,868,000 ("'000 patent"). J.A. 264–65. It is undisputed that John Bean both received and never responded to the Demand Letter. J.A. 3, 284 (admitting that John Bean received the Demand Letter through its counsel), 279 (admitting through its company representative that John Bean did not respond to the Demand Letter). With no response from John Bean, Morris continued to develop and sell its chillers.

On December 18, 2013, eleven years after the '622 patent first issued, John Bean filed a request for *ex parte* reexamination of the '622 patent with the U.S. Patent and Trademark Office. J.A. 137. The Patent Office granted John Bean's request for *ex parte* reexamination, and rejected both claims of the '622 patent as anticipated or rendered obvious by other prior art patents. J.A. 3. This included an anticipation rejection based on the '000 patent, and obviousness rejections with the '000 patent as the primary reference. In response to the rejections, John Bean amended both its specification and its claims. In addition to amending the two original claims of the '622 patent, John Bean added six additional claims, including independent claim 8. J.A. 44. On May 9, 2014, the Patent Office issued a reexamination certificate under 35 U.S.C. § 307 allowing the amended and newly added claims. J.A. 43–45.

Claim 1, the sole original independent claim, was heavily amended as follows, with the italicized text indicating newly added language:

1. An auger type food product chiller, comprising:

a tank comprising longitudinal side walls having an inlet end and an outlet end, an inlet wall closing said inlet end, an outlet wall closing said outlet end, wherein said longitudinal side walls *comprise an inner surface and an outer surface, wherein said longitudinal side walls*, said inlet wall and said outlet wall together form a semi-cylinder having an inner surface and an outer surface;

an auger comprising *a shaft and a helical blade, wherein said helical blade forms* at least one flight having outer edges, *wherein said helical blade and said inner surface of said tank side walls forms a helical path between said inlet end of said tank and said outlet end of said tank*, said auger mounted for rotation within said tank and having an axis of rotation whereby rotation of said auger moves a food product *along said helical path* from said inlet end of said tank to said outlet end of said tank;

*a volume of chilling water, wherein said tank is filled with said volume of said chilling water to a water level above said shaft of said auger and below a top of said at least one flight of said auger, wherein an entirety of said inner surface of said tank side walls is positioned parallel to said outer edges of said at least*

*one flight of said auger and* wherein said *entirety of said* inner surface of said tank side walls conforms closely to said outer edges of said one or more flights of said auger, *thereby forcing said chilling water to flow along said helical path when said auger rotates and impeding a flow of said chilling water between said tank side walls and said outer edges of said at least one flight of said auger when said auger rotates*;

means for removing the food product from said outlet end;

means for discharging chilling water from said inlet end of said tank;

refrigerating means external to said outer surface of said tank for refrigerating the chilling water discharged from said inlet end of said tank; *and*

means for re-circulating chilling water from said refrigerating means and introducing chilling water into said outlet end of said tank.

J.A. 44 col. 1 l. 49–col. 2 l. 22. Claim 2, the sole original dependent claim, was not itself amended but is limited by the newly added language to claim 1.

On June 19, 2014, twelve years after the '622 patent issued and just over a month after the reexamination certificate issued, John Bean filed a complaint against Morris for patent infringement in the U.S. District Court for the Eastern District of Arkansas. J.A. 29–31. In its amended complaint dated December 4, 2015, John Bean alleged that Morris directly infringed the '622 patent from the date the reexamination certificate issued on May 9, 2014, and induced and willfully infringed the '622 patent

from the date it served Morris with the original complaint on June 20, 2014. J.A. 140–45. John Bean did not allege that Morris engaged in any infringing activity prior to the issuance of the reexamination certificate, nor did John Bean seek damages for any activity prior to the reexamination certificate's issuance. *Id.* On December 21, 2015, Morris filed its answer and asserted, *inter alia*, the affirmative defenses of equitable estoppel, prosecution laches, and absolute and equitable intervening rights. J.A. 196.

On October 27, 2016, the district court issued a letter to the parties requesting the parties' positions on whether Morris's asserted defenses of laches and equitable estoppel could be dispositive of the case. J.A. 219. Based on the parties' agreement that a ruling on these defenses may be dispositive, the district court ordered summary judgment briefing on these two issues. J.A. 229.

On December 14, 2016, the district court granted summary judgment in favor of Morris. *John Bean Techs. Corp. v. Morris & Assocs., Inc.*, No. 4:14-CV-00368-BRW, 2016 WL 7974654, at *1 (E.D. Ark. Dec. 14, 2016). It held that John Bean's infringement action was barred by both laches and equitable estoppel. *Id.* Relevant to this appeal, the district court held that the Demand Letter established that "by June 2002, [John Bean] knew that [Morris] was selling a product that [John Bean] believe[d] infringed on their '622 patent." *Id.* at *3. The district court found that John Bean's silence constituted misleading conduct because John Bean was aware that Morris would continue to invest, develop, and sell its chillers absent a response from John Bean. *Id.* In addition, the district court found that based on the parties' history of patent litigation, John Bean's "choice to not pursue a patent-infringement claim for over twelve years is evidence of misleading conduct." *Id.* The district continued to find that Morris relied on John Bean's silence, and that Morris would be materially prejudiced if John Bean was

allowed to pursue its infringement action. *Id.* at \*4. The district court thus granted summary judgment in favor of Morris, and entered final judgment.

John Bean appeals. We have jurisdiction under 28 U.S.C. § 1295(a).

## DISCUSSION

A grant of summary judgment that equitable estoppel bars an infringement action is reviewed in two steps. *Scholle Corp. v. Blackhawk Molding Co.*, 133 F.3d 1469, 1471 (Fed. Cir. 1998). First, we review *de novo* whether the district court erred in finding no genuine issues of material fact exist. *Id.* Second, we review the district court's application of equitable estoppel for abuse of discretion. *Radio Sys. Corp. v. Lalor*, 709 F.3d 1124, 1130 (Fed. Cir. 2013) ("[T]he applicability of equitable estoppel is 'committed to the sound discretion of the trial judge.'" (quoting *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992) (en banc), *abrogated on other grounds by SCA Hygiene*, 137 S. Ct. at 959)).

Equitable estoppel serves as an absolute bar to a patentee's infringement action. *Aukerman*, 960 F.2d at 1041. The defense consists of three elements: (1) the patentee engages in misleading conduct that leads the accused infringer to reasonably infer that the patentee does not intend to assert its patent against the accused infringer; (2) the accused infringer relies on that conduct; and (3) as a result of that reliance, the accused infringer would be materially prejudiced if the patentee is allowed to proceed with its infringement action. *Scholle*, 133 F.3d at 1471. Misleading conduct may include the patentee's "specific statements, action, inaction, or silence where there was an obligation to speak." *Id.*

This case presents an unusual situation where the district court has found that equitable estoppel bars an infringement action based on activity prior to the issuance

of the asserted reexamination claims. Here, the reexamined claims did not exist in their present form in 2002 at the time Morris sent the Demand Letter to John Bean. These claims first issued in May 2014 following reexamination. We have no precedent that presents this factual scenario and provides a clear solution. Under the circumstances presented here, we find that the district court abused its discretion in extending equitable estoppel to the reexamined claims.

Our resolution of this matter lies in the principles undergirding the issuance of reexamination claims. First, claims amended and issued during reexamination cannot be broader than the original claims. 35 U.S.C. § 305; 37 C.F.R. § 1.552(b). While claim broadening can result in the invalidation of the claims under § 305, claim narrowing means that the scope of what is and is not an infringing product can change. *See Predicate Logic, Inc. v. Distributive Software, Inc.*, 544 F.3d 1298, 1302 (Fed. Cir. 2008). And when claims are narrowed during reexamination to overcome prior art, as is the case here, any validity analysis of the newly issued claims differs from that of the original broader claims. Thus, Morris's challenge to the validity of the '622 patent claims in the Demand Letter may no longer be accurate. Indeed, it would not be wrong for John Bean to narrow its claims in response to the Demand Letter.

Second, and correlatively, a patentee cannot assert reexamination claims to obtain damages prior to the issuance date of the reexamination certificate unless the reexamined claims are identical in scope to the original claims. *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346 (Fed. Cir. 1998) ("A patentee of a reexamined patent is entitled to infringement damages, *inter alia*, for the period between the date of issuance of the original claims and the date of issuance of the reexamined claims if the original and reexamined claims are 'identical.'"). Reexamined claims are considered "identical" to the original

claims if they are not substantively changed, i.e., when the amended claim "clarifies the text of the claim or makes it more definite without affecting its scope." *Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997); *see Laitram*, 163 F.3d at 1346 (citing *Seattle Box Co. v. Indus. Crating & Packing*, 731 F.2d 818, 827–28 (Fed. Cir. 1984)). If the reexamined claims contain substantive changes to the original claims, then the patentee is only entitled to damages for the period after the reexamination certificate issues. *Laitram*, 163 F.3d at 1346 (citing *Bloom*, 129 F.3d at 1249–50).

In this case, the amendments made during reexamination were both substantial and substantive. *Compare* J.A. 42, *with* J.A. 44–45. For example, newly added claim 3 contains a limitation reciting that the means for removing the food product comprises an "unloader." And the only mention of an "unloader" in the patent specification was, like claim 3, added during reexamination through incorporating another patent application by reference. *See* J.A. 44 (adding language to the specification). It is also immediately apparent that amended claim 1 includes new limitations added during reexamination, for example, the limitation of chilling water at a level above the shaft of the auger. J.A. 44.

Lastly, our resolution of this case is supported by our precedent holding that the defense of equitable estoppel does not apply to pending claims during the examination of a patent application. *Radio Sys.*, 709 F.3d at 1131. In *Radio Systems*, we held that equitable estoppel could not apply to pending patent claims even if those claims when issued could claim priority to a parent patent subject to equitable estoppel. *Id.* The reasoning behind this rule is that claims that have not issued cannot be asserted, and therefore no misleading conduct or silence could be present. *Id.* In other words, for claims that have not issued, there is no case or controversy and therefore "the elements of equitable estoppel are not present." *Id.* Here,

because the asserted claims did not exist at, or were substantively altered since, the time Morris sent John Bean the Demand Letter, John Bean could not have engaged in misleading conduct or silence with respect to those claims.

There may be other cases where the reexamined claims contain fewer amendments and narrower added claims such that the reexamined claims do not differ in scope from the original claims. In those instances, the asserted claims may possibly be considered identical for purposes of infringement, and consequently, for purposes of applying equitable estoppel. But that is not the case here. We therefore find that the district court abused its discretion in applying equitable estoppel to bar John Bean's infringement action asserting the reexamined claims.[2]

---

[2] Our resolution of this case does not mean that Morris wholly lacks any recourse in equity for John Bean's twelve-year delay in asserting the '622 patent. Specifically, the affirmative defenses of absolute and equitable intervening rights may serve to prevent John Bean from enforcing the '622 patent against Morris. *See* 35 U.S.C. §§ 252, 307; *Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1362 (Fed. Cir. 2012) (en banc) ("[A]fter a patent emerges from reexamination, [§307(b)] makes available absolute and equitable intervening rights . . . with respect to 'amended or new' claims in the reexamined patent."); *see also Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1359–61 (Fed. Cir. 2001). Although we decline to apply those defenses for the first time on appeal, as Morris asserted these defenses in its answer, the district court is free to entertain them on remand. J.A. 196.

CONCLUSION

The district court abused its discretion by applying equitable estoppel to bar John Bean's infringement action without considering how the *ex parte* reexamination affected the '622 patent claims. Because the 2014 reexamination resulted in substantive amendments that narrowed the original claims' scope as well as the addition of substantively new claims, we find that equitable estoppel cannot apply based on the 2002 Demand Letter challenging the validity of the original claims. Accordingly, we reverse the district court's grant of summary judgment based on equitable estoppel and laches, and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**

COSTS

No costs.